IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAVID WEBB                                                      PLAINTIFF

V.                              No. 3:22-cv-00197-JTK

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                 DEFENDANT

<u>ORDER</u>

## I.  <u>Introduction</u>:

Plaintiff David Webb applied for disability benefits on February 4, 2021, alleging disability beginning on November 1, 2018. (Tr. at 15). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Webb's application on April 27, 2022. (Tr. at 25). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Webb has requested judicial review.

For the reasons stated below, the Court[1] affirms the ALJ's decision.

## II.  <u>The Commissioner's Decision</u>[2]:

The ALJ found that Webb had not engaged in substantial gainful activity since the alleged onset date of November 1, 2018. (Tr. at 18). At Step Two, the ALJ found that Webb had the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 6*.

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

following severe impairments: post-traumatic stress disorder (PTSD), cervical degenerative disc disease, and left ankle injury/sprain. *Id*.

After finding at Step Three that Webb's impairments did not meet or equal a listed impairment, the ALJ determined that Webb had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) he could understand, follow, and remember concrete instructions; (2) he could have occasional interpersonal contact with coworkers, supervisors, and the public; and (3) he could perform simple, repetitive work. (Tr. at 18-20).

At Step Four, the ALJ determined that Webb was unable to perform his past relevant work as a shipping and receiving clerk. (Tr. at 23). Relying upon Vocational Expert ("VE") testimony, the ALJ found, based on Webb's age, education, work experience, and RFC, that he could perform jobs existing in significant numbers in the national economy, including jobs such as garment sorter, mail clerk, and classifier. (Tr. at 24). The ALJ therefore concluded that Webb was not disabled. *Id*.

## III.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into

account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

**B. Webb's Arguments on Appeal**

Webb contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ failed to consider the prior administrative medical findings in the record and erred in crafting an RFC that fails to account for the severity of his mental limitations. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

1. <u>RFC Limitations</u>

Webb, a Gulf War veteran, asserts that the ALJ's RFC finding does not accurately capture the social limitations posed by his combat-induced PTSD. In his hearing testimony and function reports, Webb "described significant problems interacting with others, noting that he is easily angered and engaged, leading to aggressive behavior and altercations." (Tr. at 21). The ALJ reviewed the relevant evidence and accounted for these issues in the RFC by limiting Webb to only occasional interpersonal contact with coworkers, supervisors, and the public. Webb argues that this limitation does not go far enough, and that the ALJ erred by "discounting the severity of Webb's PTSD." *Doc. 16 at 33*.

3

"A claimant's RFC is 'the most' that the claimant can do in a work setting despite [his] limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting 20 C.F.R. § 404.1545(a)(1)). A claimant bears the burden of proof to establish his RFC. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). "An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotations omitted). Although the RFC must be supported by some medical evidence, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

On appeal, Webb describes in detail his history of anger control problems, aggression, and social/crowd avoidance, and he points the Court to corresponding evidence in the record. Based on this evidence, he argues that he is incapable of occasional interpersonal interaction. But the ALJ already considered this evidence, discussed it in his written decision, and accounted for it in the RFC. "Whether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's role to reweigh that evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (quoting *Schmitt*, 27 F.4th at 1361).

The RFC is supported by objective medical evidence, including clinical findings from mental status examinations that the ALJ found "were often at odds with the severity of [Webb's] symptoms." (Tr. at 21). The ALJ referenced "unremarkable findings such as appropriate mood/affect, appropriate appearance, normal motor activity, good insight/judgment, good eye contact, intact memory, good concentrating/attention, normal thought content, normal flow of

thought, and cooperative/interactive behavior." *Id*. These exam findings, which come from multiple treatment providers, support the ALJ's conclusion as well as his decision to deny benefits. *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (affirming the denial of disability benefits, in part, because diagnostic tests and exams came back "normal" or showed "minimal" problems).

The ALJ also referenced Webb's own answers to depression and PTSD screening tests at various times, wherein Webb "denied many of the same symptoms that he now alleges disable him," including detachment from others, concentration problems, and restlessness. (Tr. at 21, 380-81, 512, 517). The ALJ also noted that when Webb was asked about how difficult these problems made working, taking care of things at home, and getting along with other people, Webb responded, "not difficult at all." (Tr. at 512, 517). The ALJ did not err in determining that this evidence was inconsistent with the level of social interaction difficulties Webb reported having.

Additionally, the ALJ found that the record contained multiple references to improvement in Webb's PTSD symptoms with therapy. (Tr. at 22, 256, 552). While in therapy, Webb reported being able to enjoy going out in public with his family, drive without road rage behaviors, go hunting without experiencing flashbacks, and watch a war movie for the first time in years. (Tr. at 539, 541, 548). The improvement in Webb's social interaction and anger following treatment supports the ALJ's decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (finding that claimant's improvement with treatment showed his symptoms were controllable and supported the ALJ's decision to discount the credibility of his complaints).

The RFC limitations are also consistent with prior administrative medical findings from state agency psychologists, who reviewed the medical records and found "similar mental limitations." (Tr. at 23). Initial reviewer Laurie Clemens, Ph.D., found that Webb showed the ability to interact appropriately with treatment sources, to follow a treatment plan, and to perform

activities of daily living. (Tr. at 65). Dr. Clemens found that Webb retained the capacity for work where interpersonal contact is routine but superficial, using the job of grocery checker as an example. *Id*. At the reconsideration level, reviewing psychologist Abesie Kelly, Ph.D., found that Webb's mental impairments were associated with mild to moderate limiting symptoms and likewise concluded that Webb was capable of performing work with routine but superficial interpersonal contact. (Tr. at 84-85).

Webb argues that the ALJ failed to properly consider the waxing and waning nature of mental illness, but he does not offer any evidence that shows his PTSD symptoms followed such a pattern. Webb also appears to suggest that the ALJ erred by failing to consider whether he was entitled to a "closed period" of disability between November 1, 2018, the alleged onset date, and April 17, 2020, when he was discharged from therapy after meeting his treatment goals. (Tr. at 552). The ALJ was not required to consider a closed period of disability because the ALJ found that Webb was capable of occasional interpersonal contact at all times throughout the relevant period. Webb bears the burden of proving his RFC, and he has failed to establish that he was incapable of performing any work prior to April 17, 2020. The Court rejects these arguments.

In sum, the social limitations in the RFC are supported by substantial evidence. Webb's argument amounts to little more than a request for this Court to reweigh the evidence in his favor, which the Court cannot do. The ALJ's findings are "within the available zone of choice provided by the whole record," and the Court must therefore affirm them. *Austin*, 52 F.4th at 731 (internal quotation omitted).

### 2.  Prior Administrative Medical Findings

Webb also argues that the ALJ failed to properly consider the prior administrative medical findings from Dr. Abesie Kelly, who reviewed Webb's records at the reconsideration level.

Although Dr. Kelly found a moderate limitation in Webb's ability to concentrate, persist, and maintain pace, the ALJ assessed only a mild limitation in this area at Step Three. (Tr. at 19, 84). Webb faults the ALJ for failing to reconcile this inconsistency. He claims that the ALJ erred by not specifically addressing Dr. Kelly's finding in the written decision.

An ALJ is required to evaluate the persuasiveness of the prior administrative medical findings in the record, but the ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis" using several factors: the supportability of the opinion, the consistency of the opinion with other evidence in the record, the medical source's relationship with the claimant, any specialization the medical source may have, and any other factors that tend to support or contradict the opinion. *Id*. § 404.1520c(b)(1), (c)(1)-(5). The ALJ is only required to explain how supportability and consistency factored into the decision. *Id*. § 404.1520c(b)(2).

The ALJ complied with the regulations by discussing the supportability and consistency of Dr. Kelly's medical findings. (Tr. at 23). He found that Dr. Kelly's assessment was supported with specific references to the record, including mental examinations, and that it was consistent with the record as a whole, including mental status exams, treatment records, and diagnostic testing. *Id*. The ALJ was not required to specifically discuss Dr. Kelly's finding regarding concentration, persistence, and pace. Moreover, the ALJ thoroughly explained why he chose to assess a mild limitation in this area. The ALJ cited specific evidence from mental status exams describing intact memory and "good" attention/concentration; medical records noting normal thought flow, appropriate thought content, and normal cognitive functioning; depression screenings wherein

Webb answered "not at all" when asked whether he had trouble concentrating on things such as reading and watching television; Webb's own statement that he can follow spoken and written instructions "well"; and his relatively normal activities of daily living. (Tr. at 19-20). The ALJ properly evaluated Dr. Kelly's medical findings, and substantial evidence supports the RFC.

Furthermore, even assuming *arguendo* that the ALJ erred, Webb has failed to demonstrate that he was harmed by the error. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred.") (internal quotation omitted). Even if the ALJ had assessed a moderate limitation in this area of mental functioning at Step Three, Webb's mental impairment would still fail to meet or equal any listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2b ("To satisfy the [relevant] criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."). And Webb has not shown that a moderate limitation in this area would necessarily require a more restrictive RFC. *See, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (finding that moderate difficulties in three areas of mental functioning were "consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks"). The Court therefore finds that any such error was harmless.

## IV. <u>Conclusion</u>:

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Webb was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 20th day of July 2023.

_____
UNITED STATES MAGISTRATE JUDGE